## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Thomas T. Joseph

_____

Write the full name of each plaintiff.

**20 CV 420**

___CV_____

(Include case number if one has been assigned)

-against-

Westchester County Department of
Community Mental Health
Westchester County

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☑ Yes   ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---



RECEIVED
JAN 1 5 2020
PRO SE OFFICE

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Thomas _____ T. _____ Joseph _____
First Name            Middle Initial        Last Name

21 Albemarle Rd. _____
Street Address

Westchester, White Plains _____ NY _____ 10605 _____
County, City                      State          Zip Code

914 - 946 - 9475 _____      ttjoseph08 @ gmail.com _____
Telephone Number              Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    Westchester County Department of Community Mental Health
                Name
                112 E Post Rd.
                Address where defendant may be served
                Westchester, White Plains  NY          10601
                County, City                State        Zip Code

Defendant 2:    Westchester County
                Name
                148 Martine Ave
                Address where defendant may be served
                Westchester, White Plains  NY          10601
                County, City                State        Zip Code

Defendant 3:

Thomas  S.  Poovappallil
Name

112  E  Post  Rd.
Address where defendant may be served

Westchester, White Plains  NY          10601
County, City                    State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Westchester County Department of Community Mental Health
Name

112  E  Post  Rd.
Address

Westchester, White Plains       NY           10601
County, City                    State              Zip Code

## III.    CAUSE OF ACTION

## A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☑ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☑ race: _____

☐ color: _____

☑ religion: _____ See Attached _____

☑ sex: _____

☑ national origin: _____

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☑ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _alcohol   abuse_

☑ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☑ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☑ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☑ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☑ provided me with terms and conditions of employment different from those of similar employees
- ☑ retaliated against me
- ☐ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

*see attached documents*

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☑ Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge? _____ 07/2018 _____

    ☐ No

Have you received a Notice of Right to Sue from the EEOC?

    ☑ Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice? _____ 10/15/2019 _____

        When did you receive the Notice? _____ 10/17/2019 _____

    ☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

    ☐ direct the defendant to hire me

    ☑ direct the defendant to re-employ me

    ☐ direct the defendant to promote me

    ☑ direct the defendant to reasonably accommodate my religion

    ☑ direct the defendant to reasonably accommodate my disability

    ☑ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

    _Salary and attorney fees from date of loss of employment (as of 02/05/2018)_

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |
| --- | --- |
| _Thomas_ _T._ | _Joseph_ |
| First Name    Middle Initial | Last Name |
| _21 Albemarle Rd._ | |
| Street Address | |
| _Westchester, White Plains_    _NY_ | _10605_ |
| County, City    State | Zip Code |
| _914 - 946 - 9475_ | _ttjoseph08@gmail.com_ |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1.  Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2.  Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1.  You will no longer receive documents in the mail;

2.  If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3.  This service does *not* allow you to electronically file your documents;

4.  It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

rev. 2/9/15

EEOC Form 161 (11/16)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Thomas Joseph<br>21 Albemarle Road<br>White Plains, NY 10605 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-04250 | Holly M. Shabazz,<br>State & Local Program Manager | (929) 506-5316 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

October 15, 2019

Enclosures(s)

Kevin J. Berry,
District Director

(Date Mailed)

cc:   **SAPIR SCHRAGIN LLP**
      **Attn: Donald L. Sapir - Esq**
      **399 Knollwood Road**
      **Suite 310**
      **White Plains, NY 10603**

      **COUNTY OF WESTCHESTER**
      **Attn: David Polizzi – Assistant County Attorney**
      **148 Martine Avenue**
      **6th Floor**
      **White Plains, NY 10601**



**Division of
Human Rights**

RECEIVED
JUL 0 8 2019
BY:_____

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>THOMAS JOSEPH,<br>　　　　　　　　　　　　　Complainant,<br>　　　　　　v.<br><br>COUNTY OF WESTCHESTER,<br>　　　　　　　　　　　　　Respondent. | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10198379 |

Federal Charge No. 520-2018-04250

On 6/5/2018, Thomas Joseph filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of sex, creed, disability, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The evidence adduced from the investigation does not support Complainant's assertion that Respondent engaged in unlawful discriminatory practices against Complainant because he is male, Indian Orthodox, and was an alcoholic. Specifically, there is insufficient evidence to support that Respondent's conduct was motivated by unlawful discriminatory animus related to his membership in these protected classes.

To support his assertion, Complainant points to Respondent's decision to mandate his participation in the Employee Assistance Program (EAP) instead of allowing him to seek private treatment. Complainant asserts that he took medical leave to seek private treatment and that upon his return from leave, Complainant was subjected to intense scrutiny by his supervisor and given additional work. Complainant claims that Respondent terminated his employment because he failed to participate in EAP. Complainant further claims that female employees are treated more favorably than their male counterparts and that they are not disciplined for their mistakes.

Complainant also asserted that his supervisor attends the same church as Complainant and that church tenets disapprove of excessive drinking. Complainant believes that because of the church tenet regarding excessive drinking, his supervisor subjected him to a hostile work environment because of Complainant's past alcoholism.

Case 7:20-cv-00420-NSR   Document 1   Filed 01/15/20   Page 11 of 61

On the other hand, Respondent denies unlawfully discriminating against Complainant. Respondent asserts that it referred Complainant to EAP because of his poor performance and erratic behavior. Respondent approved FMLA leave for Complainant to address his alcoholism. After he returned from FMLA leave, Complainant's work performance did not improve. As a result, Complainant's employment was terminated. Respondent denies treating women more favorably than men and asserts that the women Complainant referenced did not have performance issues.

A review of the record does not support Complainant's assertions that Respondent discriminated against him because of his alcoholism. The record shows that Complainant exhibited a pattern of poor performance and erratic behavior before Respondent referred him to EAP. Notably, the EAP referral does not mention that Complainant's alcoholism. Upon learning of Complainant's alcoholism, Respondent did not terminate Complainant. Instead, Respondent allowed and accommodated Complainant by allowing him to take a medical leave to seek private treatment.

Further, there is insufficient evidence to support that Complainant was subjected to a hostile work environment due to his disability or creed after his return from medical leave. The record includes no remarks or references to Complainant's creed or disability. The record shows that Complainant continued to exhibit the same poor performance issues observed prior to the EAP referral. Normal workplace supervision is not harassment, even if it is negative or upsetting to the employee.

Further, the record does not support Complainant's claim that Respondent targeted Complainant because he is male. While the record shows that all employees employed in Complainant's unit were female, except for Complainant and his supervisor, statistical data alone is insufficient to warrant a finding of discrimination. Nor is there evidence to support Complainant's claim that poor performing female workers received better treatment than similarly situated male workers. The record includes no evidence that Respondent ever made any negative remarks about Complainant's sex. Notably, Respondent was aware of Complainant's sex at his hiring and nevertheless offered him employment.

Similarly, the record includes insufficient evidence to support that Respondent discriminated against Complainant due to his creed. That Complainant and his supervisor are members of the same church and that the church's tenet forbade excessive drinking alone are insufficient to support his claim that Respondent targeted him because his disability or creed. The evidence includes no negative references or remarks made about his creed or the tenets of his church vis-à-vis his disability.

The record however does include some support for Respondent's claim that its decision to terminate his employment was due to his performance. The record includes a hearing officer's

decision upholding Respondent's decision to terminate of his employment for performance-related issues.

Case 7:20-cv-00420-NSR    Document 1    Filed 01/15/20    Page 12 of 61

Finally, Complainant's assertion that Respondent retaliated against him is also unsupported. The record does not show that Respondent engaged in any activity related to any act of opposing discrimination. The record shows that Respondent's conduct was in keeping with its supervisory duties to ensure that Complainant's performance is maintained.

On this record, there is insufficient evidence that Respondent's conduct was motivated by unlawful discriminatory animus related to Complainant's sex, creed, and disability. Nor is there evidence to support Complainant's claim of retaliation for opposing discrimination.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Your charge was also filed under the Americans with Disabilities Act (ADA). Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:    June 30, 2019
          White Plains, New York

STATE DIVISION OF HUMAN RIGHTS

By:    _____
       Linda Fenstermaker
       Regional Director

- 3 -

# SAPIR|SCHRAGIN LLP

399 Knollwood Road, Suite 310
White Plains, New York 10603
TEL (914) 328-0366
FAX (914) 682-9128
E-MAIL: dsapir@sapirschragin.com

June 4, 2018

**VIA FEDERAL EXPRESS**

**Attention: CR/TI Unit Supervisor**
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004

Re:   **Thomas T. Joseph v. County of Westchester**
      **Our File No. 8863-001**

## PLEASE FILE CHARGE IMMEDIATELY

Dear Sir or Madam:

We represent Thomas T. Joseph and request that you immediately accept for filing this Letter as a Charge of Discrimination against the County of Westchester New York and the Westchester County Department of Community Mental Health pursuant to the Americans with Disabilities Act, 42 U.S. C. § 12131 *et. seq.* and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et. seq.*

**\*\*Please cross file this Charge with the New York State Division of Human Rights solely the purposes of satisfying any statutory requirements to file with a state deferral agency and not for election of remedy purposes.\*\***

**\*\*Mr. Joseph hereby requests to participate in mediation with an EEOC Mediator.\*\***

**\*\* Charging Party hereby requests a copy of the position statement and any other documents or information provided to the EEOC by Respondents and an opportunity to provide a rebuttal or other response to the position statement. \*\***

Please date stamp a copy of this Charge with the "filed" date and return it to us in the enclosed self-addressed envelope. All correspondence regarding this matter should be directed to this firm.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 2
June 4, 2018

## CHARGE OF DISCRIMINATION

### A.    Charging Party's Name, Address, and Phone Number

Thomas T. Joseph, 21 Albemarle Road, White Plains, NY 10605, (H) 914-946-9475

### B.    Name, Address of Employer(s)

County of Westchester, New York, 148 Martine Avenue, White Plains, N.Y. 10601, 914-995-2000

Westchester County Department of Community Health, 112 East Post Road, 2nd Floor, White Plains, NY 10601, 914-995-5220

### C.    Number of Employees

County of Westchester New York, Approx. 5,000 plus.

Westchester County Department of Community Mental Health, Approx. 300 plus

### D.    Short Description of Events

Terminated because of disability (recovering alcoholic); Refusal to accommodate this disability and retaliation; and

Terminated and subject to different terms and conditions of employment because of his sex (male); and

Terminated and subject to different terms and conditions of employment because of his religion (Member of Indian Orthodox Church).

### E.    Dates When Events Took Place

From approximately January 19, 2017, until Mr. Joseph's termination effective February 6, 2018. A continuing violation occurred.

### F.    Basis of Discrimination

The discrimination occurred because of Mr. Joseph's disability (recovering alcoholic), and because his employer refused to accommodate his known disability and retaliated against him because he refused to go to the specific Employee Assistance Program chosen by the Employer. The Employer also retaliated against him because he took leave in order to treat his disability. The Employer 's actions violated the Americans with Disabilities Act.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 3
June 4, 2018

Further, the Mr. Joseph was terminated because of his sex (male) and he was subject to different terms and conditions of employment because of his sex in violation of Title VII.

Additionally, Mr. Joseph was subjected to discrimination based upon his religion and terminated because he did not comply with the tenets of his Church by consuming alcohol.

## STATEMENT OF ADDITIONAL FACTS

### I.    Background

1.  Charging Thomas T. Joseph brings this Charge of discrimination against the County of Westchester, New York and the Westchester County Department of Community Health ("collectively referred to as Employer"), due to his unlawful termination because of his disability (recovering alcoholic), the refusal to accommodate his disability and because he was unlawfully retaliated against because he chose not to use the Employer's Employee Assistance Program and took leave. These actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et. seq.* The Charging Party was also unlawfully terminated because of his sex (male) and subject to disparate treatment because of his sex and religion in violation of Title VII, 42 U.S.C. § 2000e-2 *et. seq.*

2.  The County of Westchester, New York is an Employer within the meaning of the ADA and Title VII.

3.  The Westchester County Department of Community Health is an Employer within the meaning of the ADA and Title VII and is the Department where the Mr. Joseph worked.

4.  Mr. Joseph is a recovering alcoholic. He has been in recovery since February 28, 2017. As a recovering alcoholic, he has a covered disability under the ADA. Mr. Joseph is also a male employee and is a member of the Indian Orthodox Church.

5.  On June 29, 2008, Mr. Joseph was hired as an Accountant II by Westchester County Department of Health. He stayed in that position until February 2, 2012, at which time he was promoted to Supervisor-Fiscal Operations at Westchester Department of Community Mental Health. Mr. Joseph has approximately ten years of dedicated experience with Westchester County, the last six of which have been with the Department of Community Mental Health. Mr. Joseph earned approximately $102,395 per annum.

6.  The Indian Orthodox Church is also known as the Malankara Orthodox Syrian Church. It is one of the churches of India's Saint Thomas Christian community and is centered

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 4
June 4, 2018

in the Indian state of Kerala. Mr. Thomas Poovappallil, who became Mr. Joseph's Supervisor at the Westchester Department of Community Mental Health, belongs to this same church. Mr. Povvappallil and Mr. Joseph knew each other before Mr. Joseph was hired through the mutual membership in the church. Mr. Poovappallil suggested that Mr. Joseph to apply for the position in his office and eventually hired him.

7. The Westchester County Department of Community Mental Health oversees and coordinates services for individuals, and their families, with mental illness, developmental disabilities and substance abuse disorders. Mr. Joseph was responsible to supervise and coordinate the implementation of short and long-term fiscal policies, programs and procedures as they relate to general fiscal operations, budgeting, auditing, financial analysis and financial reimbursements. He monitored and managed HUD rental assistance and other programs, interacted with providers, audited their books, monitored interdepartmental agreements and oversaw claims and reimbursements.

8. Mr. Joseph's performance has always been characterized as excellent. His last formal evaluation covered the period from March 1, 2015, until March 1, 2016, and he was rated as meeting or exceeding all job requirements in all categories.

## II.    Additional Facts Supporting Disability Discrimination

9. By Memo dated January 19, 2017, Mr. Thomas Poovappallil, criticized Mr. Joseph's work performance for the first time and his supervisor referred to Mr. Joseph'"behavior" as "irrational" and that he had "great difficulty in following simple instructions." In this same Memo, his supervisor referred Mr. Joseph to the Employee Assistance Program ("EAP") and he was asked to "inform him [his supervisor] about the meetings you will have with EAP. . ." A copy of that letter is annexed as Ex. 1.

10. The Westchester County EAP program offers assessments and referrals for alcohol and substance abuse as well as other forms of mental health. https://mentalhealth.westchestergov.com/overview    Very significantly, it is administered by the same department that the Mr. Joseph works for (Westchester County Dep't. of Community Mental Health). The Westchester County EAP program which Mr. Joseph's supervisor, Mr. Poovappallil, referred him to is located in the same building and on the same floor that the Mr. Joseph worked, 112 East Post Road, 2nd Floor, White Plains, N.Y. Mr. Joseph knows the Director of the Westchester County EAP, Ms. Susan Manzione. While employed by the Westchester County Department of Community Health, Mr. Joseph worked on several work-related projects with Ms. Manzione.

11. Mr. Joseph did not initially utilize the Westchester County EAP program because he wanted to keep his disability confidential; he was embarrassed and preferred to obtain

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 5
June 4, 2018

private treatment, which as outlined below, is what he did. Mr. Joseph also obtained private help in compliance with his supervisor's instruction.

12. On February 24, 2017, Mr. Joseph's supervisor Mr. Poovappallil, and other employees accused Mr. Joseph as acting strangely at work, being sleepy and Public Safety was summoned to Mr. Joseph's work site. He was taken for an alcohol and drug test off premises. Later, Mr. Joseph was given the lab result by the lab which indicated that he tested positive for alcohol. Mr. Joseph did not drink while on his job which started at 9:00 a.m., but he did have alcohol the night before. Mr. Joseph was not able to consume fluids and food on February 24th due to other unrelated medical problems, and, as restricted by his supervisor. Significantly, this matter did cause Mr. Joseph to recognize that he had a problem with alcohol.

13. Between February 25, 2017, and March 24, 2017, Mr. Joseph was on approved FMLA leave for severe "alcohol use disorder."

14. During this time period, Mr. Joseph's wife corresponded with Mr. Joseph's supervisor, Mr. Poovappallil re: FMLA leave and Mr. Poovappallil was given a copy of a completed FMLA form which stated Mr. Joseph had "alcohol use disorder severe" and that he needed in-patient rehabilitation. (A copy of the FMLA leave form and emails between Mr. Poovappallil and Lini Thomas (Charging Party's wife) is annexed as Exhibit 2.

15. Between February 24, 2017, and February 28, 2017, Mr. Joseph was hospitalized for alcohol withdrawal symptoms and other medical problems related to alcoholism at White Plains Hospital. Thereafter, Mr. Joseph voluntarily entered into an inpatient rehabilitation program at St. Vincent's Hospital Westchester. A certificate dated March 22, 2017, establishes that Mr. Joseph successfully completed rehabilitation and that he has been sober since February 28, 2017. Mr. Joseph's treating physician, Dr. Olko approved his return to work effective March 27, 2017. (copies of certificate and return to work annexed as Exhibit 3). Despite the enormous emotional distress inflicted upon him at work, Mr. Joseph remains in recovery.

16. After Mr. Joseph returned from his FMLA leave on March 27, 2017, his disability became the talk of the office. Other than disclosing his need for alcohol rehabilitation on his FMLA form which was given to his direct supervisor, Mr. Poovapallil, Mr. Joseph did not discuss his disability with anyone employed by the Employer as he desired to keep this confidential.

17. Significantly, almost immediately upon his return, on March 31, 2017, Mr. Joseph was served with disciplinary charges. Those disciplinary charges referenced the EAP program mentioned above and alleged:

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 6
June 4, 2018

1. On or about January 19, 2017, you engaged in misconduct and/or incompetence when you failed to report to the Employee Assistance Program ("EAP") after being given a supervisory referral.
2. You engaged in misconduct and/or incompetence when you failed to report to EAP as directed.

18. Mr. Joseph was also served with amended disciplinary charges on or about May 17, 2017, which alleged several minor instances of misconduct. The two sets of charges were consolidated and a hearing was held which resulted in a Hearing Officer Report and Recommendation dated January 16, 2018 (misdated 2017) which recommended Mr. Joseph's termination. (Exhibit 4).  Mr. Joseph was terminated by letter dated February 5, 2018, effective February 6, 2018. (Exhibit 5).

19. Significantly,  Mr. Joseph's alcoholism was not part of the Civil Service Law Section 75 charges or the hearing. Instead, the major charge against Mr. Joseph was that he failed to report to the Employer's EAP program. As demonstrated above, at the time of the hearing and at the time of Mr. Joseph's termination, the Employer knew that Mr. Joseph successfully completed a private alcohol rehabilitation program.

20. Despite express knowledge of Mr. Joseph's disability, the Employer never offered an accommodation and interfered with Mr. Joseph's efforts to rehabilitate himself by bringing him up on disciplinary charges for not going to the Employer's EAP program even though he successfully obtained private treatment. The Employer also terminated him after he successfully rehabilitated himself.

21. Of significance is that despite being brought up on disciplinary charges on March 31, 2017,  Mr. Joseph was permitted to work until February 5, 2018, except for an approximate one-month period (between April 25, 2017 and June 2, 2017) when Mr. Joseph was suspended pursuant to the procedures set forth in N.Y. Civil Service Law § 75. During this period of time, he continued to perform his job in a satisfactory manner. This demonstrates that he was fully qualified at the time of his termination and that the termination was for pretextual reasons.

22. Throughout Mr. Joseph's employment, his direct supervisor Mr. Poovapallil created a hostile, abusive and humiliating environment to work. Upon returning to work from his FMLA leave due to his alcohol disability on March 27, 2017, Mr. Poovapallil, for the first time, required that he submit his daily work directly to him every day at 4:30 p.m. During this period of time, Mr. Poovapalil also stormed into Mr. Joseph's office and treated him in a rude and unprofessional manner.

23. After  Mr. Joseph completed rehabilitation and returned from his FMLA leave on March 27, 2017, which was necessary to address his disability, his workload was increased in that he was given additional work assignments (in addition to his regular

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 7
June 4, 2018

work) which he had never been assigned to before. For example, he was given projects concerning the NYS Office of Mental Health which he did not work on before.

24. On or about April 5, 2017, which was shortly after Mr. Joseph returned from rehabilitation and FMLA leave (and after Mr. Joseph stopped drinking), his supervisor, Mr. Poovappallil, called him into his office, closed the door and he let Mr. Joseph know that he was upset with his drinking. Mr. Povappallil spoke to Mr. Joseph in a nasty tone of voice and blamed a disagreement that Mr. Joseph had with him concerning the use of a funding code, which was part of the Section 75 Charges, on his drinking.

25. Again, on or about April 7, 2017, Mr. Poovappallil called Mr. Joseph into his office and during a closed-door meeting, he spoke to Mr. Joseph in a nasty tone and he blamed Mr. Joseph's drinking problem on his refusal to sign a work-related document. The meeting was initially called because Mr. Joseph used the 2016 State Aid Letter instead of 2017. In fact, Mr. Joseph was told to use the 2016 figures because the 2017 information from the state was not available when he performed the work.

### III.    Additional Facts Supporting Sex Discrimination

26. The other disciplinary charges that the Mr. Joseph was charged with were all very petty and minor. Other employees who were not disabled and who were all women, committed much more serious forms of misconduct and they were not disciplined. For example, a female employee named Mercy Joseph was constantly late, made frequent errors at work and would not follow instructions. Mr. Poovapallil refused to discipline her. He had knowledge of her misconduct and it was reflected in her evaluation.

27. Additionally, as a subordinate, Mr. Joseph had to go to his supervisor's office for certain work-related matters as well as to obtain his approval on certain projects that he was working on. His direct supervisor, Mr. Poovapallil restricted Mr. Joseph's ability to do his job because he was directed to leave his work in his supervisor's mailbox. However, female employees were welcomed to come into Mr. Poovapallil's office at any time.

28. As noted above, upon returning from FMLA leave, Mr. Joseph was required to submit his work daily, but female employees on the same level were not required to submit their work daily.

29. Mr. Joseph's request for vacation time off between December 27, 2016, and January 6, 2017, was denied, but female employees' vacation requests were always granted.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 8
June 4, 2018

30. When Mr. Joseph did take a vacation or other leave, his work was piled up and not assigned to other employees, all of whom were female. However, when one of the female employees took leave, their work was reassigned to Mr. Joseph.

## IV.     Additional Facts Supporting Religious Discrimination

31. One of the tenets of the Indian Orthodox Church is that members should not drink alcohol heavily. As noted above, Mr. Poovappallil, Mr. Joseph's supervisor, and Mr. Joseph belong to the same Church. In the County of Westchester, the Indian Orthodox Church is relatively small community.

32. Upon information and belief, Mr. Poovappallil believes in the tenants of the Church

33. Upon information and belief, Mr. Poovappallil takes seriously the Church's restriction on the use of alcohol.

34. Mr. Poovappallil found it particularly offensive because of Mr. Joseph's religion, that Mr. Joseph had a problem with alcohol and this is an additional unlawful reason why he was terminated and treated so poorly by Mr. Poovappallil.

35. Additionally, as noted above, on or about April 5, 2017, and again on April 7, 2017, Mr. Poovappallil spoke to Mr. Joseph in a nasty tone and blamed relatively minor and technical work disagreements on the fact that Mr. Joseph had a problem with alcohol. This was after Mr. Joseph returned from rehabilitation and FMLA leave.

## V.     Civil Service Matter is Not Collateral Estoppel

36. As you know, a finding of cause for termination does not preclude the fact that a termination can be motivated by discrimination. Collateral estoppel cannot apply to the issue of discrimination unless it was "actually decided." *Leon v. N.Y.C. Dep't. of Education,* 612 Fed App. 632 (2d Cir. 2015); *Cherry v. N.Y.C. Housing Authority,* 2017 U.S. Dist. Lexis 161830, n. 32 (E.D.N.Y. 2017) ("Even though there was a Section 75 hearing that substantiated plaintiff's termination and plaintiff is precluded from arguing that the allegations against him were false, he is not barred from arguing that the termination was also motivated by retaliatory animus."). The issue of the Charing Party's disability, the lack of accommodation, sex and religious discrimination were never raised or discussed in the Civil Service Law § 75 proceedings.

37. Mr. Joseph seeks reinstatement; back pay and front pay; compensatory damages for emotional distress, mental anguish and pain and suffering; punitive damages; reasonable attorneys' fees and costs; and such other remedies as may be available under applicable law.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 9
June 4, 2018

Please do not hesitate to contact me if you have any questions, if need further information
or for some reason, this Charge of Discrimination has not been accepted for filing.

Respectfully submitted,

Donald L. Sapir

_____    Dated June 4ᵗʰ, 2018
Thomas T. Joseph
Approved and Co-signed

DLS/MHR
Enclosures



**NEW YORK STATE** | **Division of Human Rights**

ANDREW M. CUOMO
Governor

HELEN DIANE FOSTER
Commissioner

December 6, 2018

Thomas Joseph
21 Albemarle Road
White Plains, NY 10605

Donald L. Sapir, Esq.
Sapir/Schragin, LLP
399 Knollwood Road, Suite 310
White Plains, NY 10603

Re:    Thomas Joseph vs. Westchester County, Department of Community Mental
       Health
       Case No. 10198380

Dear: Mr. Joseph/Sapir:

Your complaint, originally filed with the Equal Employment Opportunity Commission (EEOC), has been transferred to the New York State Division of Human Rights for complaint filing and further processing and investigation. If you consent to the transfer, please **sign and notarize** the Division complaint cover page with the EEOC charge attached and return it to the Division to begin the investigation process.

If you have any questions, please contact the Division at (914) 989-3120.

Very truly yours,

Ramona Caquias
Program Aide

P.O. Box 2049, Empire State Plaza, Agency Building 1, Second Floor, Albany, New York 12220
(518) 474-2705 | Facsimile (518) 473-3422 | WWW.DHR.NY.GOV

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

THOMAS JOSEPH,

                                    Complainant,

                    v.

WESTCHESTER COUNTY, DEPARTMENT OF
COMMUNITY MENTAL HEALTH,

                                    Respondent.

---

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10198380**

Federal Charge No. 520-2018-04251

I, Thomas Joseph, residing at 21 Albemarle Road, White Plains, NY, 10605, charge the above named respondent, whose address is 112 East Post Road, White Plains, NY, 10601 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability, sex, creed, opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 2/6/2018.

The allegations are:

1.      (SEE ATTACHED COMPLAINT).

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of disability, sex, creed, opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I also charge the above-named respondent with violating the Americans with Disabilities Act (ADA) (covers disability relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | 520-2018-04251 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.)<br>**Thomas Joseph** | Home Phone (Incl. Area Code)<br>**(914) 946-9475** | Date of Birth |
|---|---|---|

Street Address           City, State and ZIP Code

**21 Albemarle Road, White Plains, NY 10605**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**WESTECHESTER COUNTY DEPARTMENT OF COMMUNITY HEALTH** | No. Employees, Members<br>**Unknown** | Phone No. (Include Area Code)<br>**(914) 995-5220** |
|---|---|---|

Street Address           City, State and ZIP Code

**112 East Post Road, Second Floor, White Plains, NY 10601**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address           City, State and ZIP Code

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest        Latest<br>**01-19-2017**    **02-06-2018**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

\*\*\*\*\*\*\*\*\*\*\*\***See Attached**\*\*\*\*\*\*\*\*\*\*\*\*

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

JUN 0 5 2018

**DATE RECEIVED**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jun 05, 2018**<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 2
June 4, 2018

## CHARGE OF DISCRIMINATION

**A.    Charging Party's Name, Address, and Phone Number**

Thomas T. Joseph, 21 Albemarle Road, White Plains, NY 10605, (H) 914-946-9475

**B.    Name, Address of Employer(s)**

County of Westchester, New York, 148 Martine Avenue, White Plains, N.Y. 10601, 914-995-2000

Westchester County Department of Community Health, 112 East Post Road, 2nd Floor, White Plains, NY 10601, 914-995-5220

**C.    Number of Employees**

County of Westchester New York, Approx. 5,000 plus.

Westchester County Department of Community Mental Health, Approx. 300 plus

**D.    Short Description of Events**

Terminated because of disability (recovering alcoholic); Refusal to accommodate this disability and retaliation; and

Terminated and subject to different terms and conditions of employment because of his sex (male); and

Terminated and subject to different terms and conditions of employment because of his religion (Member of Indian Orthodox Church).

**E.    Dates When Events Took Place**

From approximately January 19, 2017, until Mr. Joseph's termination effective February 6, 2018.  A continuing violation occurred.

**F.    Basis of Discrimination**

The discrimination occurred because of  Mr. Joseph's disability (recovering alcoholic), and because his employer refused to accommodate his  known disability  and  retaliated  against  him  because  he  refused  to  go  to  the specific Employee Assistance Program chosen by the Employer. The Employer also retaliated against him because he took leave in order to treat his disability. The Employer 's actions violated the Americans with Disabilities Act.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 3
June 4, 2018

Further, the Mr. Joseph was terminated because of his sex (male) and he was subject to different terms and conditions of employment because of his sex in violation of Title VII.

Additionally, Mr. Joseph was subjected to discrimination based upon his religion and terminated because he did not comply with the tenets of his Church by consuming alcohol.

## STATEMENT OF ADDITIONAL FACTS

### I.    Background

1. Charging Thomas T. Joseph brings this Charge of discrimination against the County of Westchester, New York and the Westchester County Department of Community Health ("collectively referred to as Employer"), due to his unlawful termination because of his disability (recovering alcoholic), the refusal to accommodate his disability and because he was unlawfully retaliated against because he chose not to use the Employer's Employee Assistance Program and took leave. These actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et. seq.* The Charging Party was also unlawfully terminated because of his sex (male) and subject to disparate treatment because of his sex and religion in violation of Title VII, 42 U.S.C. § 2000e-2 *et. seq.*

2. The County of Westchester, New York is an Employer within the meaning of the ADA and Title VII.

3. The Westchester County Department of Community Health is an Employer within the meaning of the ADA and Title VII and is the Department where the Mr. Joseph worked.

4. Mr. Joseph is a recovering alcoholic. He has been in recovery since February 28, 2017. As a recovering alcoholic, he has a covered disability under the ADA. Mr. Joseph is also a male employee and is a member of the Indian Orthodox Church.

5. On June 29, 2008, Mr. Joseph was hired as an Accountant II by Westchester County Department of Health. He stayed in that position until February 2, 2012, at which time he was promoted to Supervisor-Fiscal Operations at Westchester Department of Community Mental Health. Mr. Joseph has approximately ten years of dedicated experience with Westchester County, the last six of which have been with the Department of Community Mental Health. Mr. Joseph earned approximately $102,395 per annum.

6. The Indian Orthodox Church is also known as the Malankara Orthodox Syrian Church. It is one of the churches of India's Saint Thomas Christian community and is centered

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 4
June 4, 2018

in the Indian state of Kerala. Mr. Thomas Poovappallil, who became Mr. Joseph's Supervisor at the Westchester Department of Community Mental Health, belongs to this same church. Mr. Povvappallil and Mr. Joseph knew each other before Mr. Joseph was hired through the mutual membership in the church. Mr. Poovappallil suggested that Mr. Joseph to apply for the position in his office and eventually hired him.

7. The Westchester County Department of Community Mental Health oversees and coordinates services for individuals, and their families, with mental illness, developmental disabilities and substance abuse disorders. Mr. Joseph was responsible to supervise and coordinate the implementation of short and long-term fiscal policies, programs and procedures as they relate to general fiscal operations, budgeting, auditing, financial analysis and financial reimbursements. He monitored and managed HUD rental assistance and other programs, interacted with providers, audited their books, monitored interdepartmental agreements and oversaw claims and reimbursements.

8. Mr. Joseph's performance has always been characterized as excellent. His last formal evaluation covered the period from March 1, 2015, until March 1, 2016, and he was rated as meeting or exceeding all job requirements in all categories.

## II.    Additional Facts Supporting Disability Discrimination

9. By Memo dated January 19, 2017, Mr. Thomas Poovappallil, criticized Mr. Joseph's work performance for the first time and his supervisor referred to Mr. Joseph'"behavior" as "irrational" and that he had "great difficulty in following simple instructions." In this same Memo, his supervisor referred Mr. Joseph to the Employee Assistance Program ("EAP") and he was asked to "inform him [his supervisor] about the meetings you will have with EAP. . ." A copy of that letter is annexed as Ex. 1.

10. The Westchester County EAP program offers assessments and referrals for alcohol and substance abuse as well as other forms of mental health. https://mentalhealth.westchestergov.com/overview    Very significantly, it is administered by the same department that the Mr. Joseph works for (Westchester County Dep't. of Community Mental Health). The Westchester County EAP program which Mr. Joseph's supervisor, Mr. Poovappallil, referred him to is located in the same building and on the same floor that the Mr. Joseph worked, 112 East Post Road, 2nd Floor, White Plains, N.Y. Mr. Joseph knows the Director of the Westchester County EAP, Ms. Susan Manzione. While employed by the Westchester County Department of Community Health, Mr. Joseph worked on several work-related projects with Ms. Manzione.

11. Mr. Joseph did not initially utilize the Westchester County EAP program because he wanted to keep his disability confidential; he was embarrassed and preferred to obtain

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 5
June 4, 2018

private treatment, which as outlined below, is what he did. Mr. Joseph also obtained private help in compliance with his supervisor's instruction.

12. On February 24, 2017, Mr. Joseph's supervisor Mr. Poovappallil, and other employees accused Mr. Joseph as acting strangely at work, being sleepy and Public Safety was summoned to Mr. Joseph's work site. He was taken for an alcohol and drug test off premises. Later, Mr. Joseph was given the lab result by the lab which indicated that he tested positive for alcohol. Mr. Joseph did not drink while on his job which started at 9:00 a.m., but he did have alcohol the night before. Mr. Joseph was not able to consume fluids and food on February 24th due to other unrelated medical problems, and, as restricted by his supervisor. Significantly, this matter did cause Mr. Joseph to recognize that he had a problem with alcohol.

13. Between February 25, 2017, and March 24, 2017, Mr. Joseph was on approved FMLA leave for severe "alcohol use disorder."

14. During this time period, Mr. Joseph's wife corresponded with Mr. Joseph's supervisor, Mr. Poovappallil re: FMLA leave and Mr. Poovappallil was given a copy of a completed FMLA form which stated Mr. Joseph had "alcohol use disorder severe" and that he needed in-patient rehabilitation. (A copy of the FMLA leave form and emails between Mr. Poovappallil and Lini Thomas (Charging Party's wife) is annexed as Exhibit 2.

15. Between February 24, 2017, and February 28, 2017, Mr. Joseph was hospitalized for alcohol withdrawal symptoms and other medical problems related to alcoholism at White Plains Hospital. Thereafter, Mr. Joseph voluntarily entered into an inpatient rehabilitation program at St. Vincent's Hospital Westchester. A certificate dated March 22, 2017, establishes that Mr. Joseph successfully completed rehabilitation and that he has been sober since February 28, 2017. Mr. Joseph's treating physician, Dr. Olko approved his return to work effective March 27, 2017. (copies of certificate and return to work annexed as Exhibit 3). Despite the enormous emotional distress inflicted upon him at work, Mr. Joseph remains in recovery.

16. After Mr. Joseph returned from his FMLA leave on March 27, 2017, his disability became the talk of the office. Other than disclosing his need for alcohol rehabilitation on his FMLA form which was given to his direct supervisor, Mr. Poovapallil, Mr. Joseph did not discuss his disability with anyone employed by the Employer as he desired to keep this confidential.

17. Significantly, almost immediately upon his return, on March 31, 2017, Mr. Joseph was served with disciplinary charges. Those disciplinary charges referenced the EAP program mentioned above and alleged:

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 6
June 4, 2018

1. On or about January 19, 2017, you engaged in misconduct and/or incompetence when you failed to report to the Employee Assistance Program ("EAP") after being given a supervisory referral.

2. You engaged in misconduct and/or incompetence when you failed to report to EAP as directed.

18. Mr. Joseph was also served with amended disciplinary charges on or about May 17, 2017, which alleged several minor instances of misconduct. The two sets of charges were consolidated and a hearing was held which resulted in a Hearing Officer Report and Recommendation dated January 16, 2018 (misdated 2017) which recommended Mr. Joseph's termination. (Exhibit 4). Mr. Joseph was terminated by letter dated February 5, 2018, effective February 6, 2018. (Exhibit 5).

19. Significantly, Mr. Joseph's alcoholism was not part of the Civil Service Law Section 75 charges or the hearing. Instead, the major charge against Mr. Joseph was that he failed to report to the Employer's EAP program. As demonstrated above, at the time of the hearing and at the time of Mr. Joseph's termination, the Employer knew that Mr. Joseph successfully completed a private alcohol rehabilitation program.

20. Despite express knowledge of Mr. Joseph's disability, the Employer never offered an accommodation and interfered with Mr. Joseph's efforts to rehabilitate himself by bringing him up on disciplinary charges for not going to the Employer's EAP program even though he successfully obtained private treatment. The Employer also terminated him after he successfully rehabilitated himself.

21. Of significance is that despite being brought up on disciplinary charges on March 31, 2017, Mr. Joseph was permitted to work until February 5, 2018, except for an approximate one-month period (between April 25, 2017 and June 2, 2017) when Mr. Joseph was suspended pursuant to the procedures set forth in N.Y. Civil Service Law § 75. During this period of time, he continued to perform his job in a satisfactory manner. This demonstrates that he was fully qualified at the time of his termination and that the termination was for pretextual reasons.

22. Throughout Mr. Joseph's employment, his direct supervisor Mr. Poovapallil created a hostile, abusive and humiliating environment to work. Upon returning to work from his FMLA leave due to his alcohol disability on March 27, 2017, Mr. Poovapallil, for the first time, required that he submit his daily work directly to him every day at 4:30 p.m. During this period of time, Mr. Poovapalil also stormed into Mr. Joseph's office and treated him in a rude and unprofessional manner.

23. After Mr. Joseph completed rehabilitation and returned from his FMLA leave on March 27, 2017, which was necessary to address his disability, his workload was increased in that he was given additional work assignments (in addition to his regular

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 7
June 4, 2018

work) which he had never been assigned to before. For example, he was given projects concerning the NYS Office of Mental Health which he did not work on before.

24. On or about April 5, 2017, which was shortly after Mr. Joseph returned from rehabilitation and FMLA leave (and after Mr. Joseph stopped drinking), his supervisor, Mr. Poovappallil, called him into his office, closed the door and he let Mr. Joseph know that he was upset with his drinking. Mr. Povappallil spoke to Mr. Joseph in a nasty tone of voice and blamed a disagreement that Mr. Joseph had with him concerning the use of a funding code, which was part of the Section 75 Charges, on his drinking.

25. Again, on or about April 7, 2017, Mr. Poovappallil called Mr. Joseph into his office and during a closed-door meeting, he spoke to Mr. Joseph in a nasty tone and he blamed Mr. Joseph's drinking problem on his refusal to sign a work-related document. The meeting was initially called because Mr. Joseph used the 2016 State Aid Letter instead of 2017. In fact, Mr. Joseph was told to use the 2016 figures because the 2017 information from the state was not available when he performed the work.

## III.    Additional Facts Supporting Sex Discrimination

26. The other disciplinary charges that the Mr. Joseph was charged with were all very petty and minor. Other employees who were not disabled and who were all women, committed much more serious forms of misconduct and they were not disciplined. For example, a female employee named Mercy Joseph was constantly late, made frequent errors at work and would not follow instructions. Mr. Poovapallil refused to discipline her. He had knowledge of her misconduct and it was reflected in her evaluation.

27. Additionally, as a subordinate, Mr. Joseph had to go to his supervisor's office for certain work-related matters as well as to obtain his approval on certain projects that he was working on. His direct supervisor, Mr. Poovapallil restricted Mr. Joseph's ability to do his job because he was directed to leave his work in his supervisor's mailbox. However, female employees were welcomed to come into Mr. Poovapallil's office at any time.

28. As noted above, upon returning from FMLA leave, Mr. Joseph was required to submit his work daily, but female employees on the same level were not required to submit their work daily.

29. Mr. Joseph's request for vacation time off between December 27, 2016, and January 6, 2017, was denied, but female employees' vacation requests were always granted.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 8
June 4, 2018

30. When Mr. Joseph did take a vacation or other leave, his work was piled up and not assigned to other employees, all of whom were female. However, when one of the female employees took leave, their work was reassigned to Mr. Joseph.

## IV.    Additional Facts Supporting Religious Discrimination

31. One of the tenets of the Indian Orthodox Church is that members should not drink alcohol heavily. As noted above, Mr. Poovappallil, Mr. Joseph's supervisor, and Mr. Joseph belong to the same Church. In the County of Westchester, the Indian Orthodox Church is relatively small community.

32. Upon information and belief, Mr. Poovappallil believes in the tenants of the Church

33. Upon information and belief, Mr. Poovappallil takes seriously the Church's restriction on the use of alcohol.

34. Mr. Poovappallil found it particularly offensive because of Mr. Joseph's religion, that Mr. Joseph had a problem with alcohol and this is an additional unlawful reason why he was terminated and treated so poorly by Mr. Poovappallil.

35. Additionally, as noted above, on or about April 5, 2017, and again on April 7, 2017, Mr. Poovappallil spoke to Mr. Joseph in a nasty tone and blamed relatively minor and technical work disagreements on the fact that Mr. Joseph had a problem with alcohol. This was after Mr. Joseph returned from rehabilitation and FMLA leave.

## V.    Civil Service Matter is Not Collateral Estoppel

36. As you know, a finding of cause for termination does not preclude the fact that a termination can be motivated by discrimination. Collateral estoppel cannot apply to the issue of discrimination unless it was "actually decided." *Leon v. N.Y.C. Dep't. of Education,* 612 Fed App. 632 (2d Cir. 2015); *Cherry v. N.Y.C. Housing Authority,* 2017 U.S. Dist. Lexis 161830, n. 32 (E.D.N.Y. 2017) ("Even though there was a Section 75 hearing that substantiated plaintiff's termination and plaintiff is precluded from arguing that the allegations against him were false, he is not barred from arguing that the termination was also motivated by retaliatory animus."). The issue of the Charing Party's disability, the lack of accommodation, sex and religious discrimination were never raised or discussed in the Civil Service Law §. 75 proceedings.

37. Mr. Joseph seeks reinstatement; back pay and front pay; compensatory damages for emotional distress, mental anguish and pain and suffering; punitive damages; reasonable attorneys' fees and costs; and such other remedies as may be available under applicable law.

CR/TI Unit Supervisor
U.S. Equal Employment Opportunity Commission
New York District Office
Page 9
June 4, 2018

Please do not hesitate to contact me if you have any questions, if need further information or for some reason, this Charge of Discrimination has not been accepted for filing.

Respectfully submitted,

Donald L. Sapir

_____   Dated June 4, 2018
Thomas T. Joseph
Approved and Co-signed

DLS/MHR
Enclosures



Memorandum
Department of
Community Mental Health

Date: January 19, 2017

To

Thomas Joseph
Supervisor, Fiscal Operations

From

Thomas Poovappallil
Director, Mental Health Services

Sub: Counseling Memo/EAP Referral for Job Performance and/or insubordination.

As I have discussed with you in person and communicated through emails many times, you have been failing to properly perform and/or timely perform your job duties as Supervisor of Fiscal Operations for the past several months. The most recent instances of your failure to perform your job duties properly and/or in a timely manner, as well as your insubordination, and irrational actions/behavior are stated below:

1. You were asked to finish reviewing all the Inter-departmental agreement claims against 2016 budget before 1/9/17. However, you purposefully delayed processing these claims for payments, as you were notified by my email dated 1/10/17(pl. see the attached email marked #1).

2. The final claim you prepared for the CASAC program couldn't be approved and sent to DSS before the deadline of 1/9/17 because after the final claim, the account will show a deficit in the amount of over $26K when it is supposed to be balanced, as I explained in my email sent you on 1/6/17(see attached email marked #2). Subsequently, per our discussions, you made revisions on the claim by including the fringe benefits for Susan Manzione which had been omitted previously. However, the DSS required a budget modification matching the claim. When I was working on the modification referring to the expenses recorded in the Accounting System and your claim report, I realized that you had not included some of the expenses and the final claim needs to be revised again. We met yesterday and discussed it and I had asked you to submit the corrected claim to DSS immediately. This morning you confirmed to me that you submitted a revised final claim to DSS matching the Budget Mod Request which I prepared partly based on your claim report(salaries) and Infoview Grant Expense Report.

3. The HDSW's Westcares September claim you submitted for payment was returned to you noting that the invoice provided as back up for the purchase of furniture didn't state item pricing, and some of the names the furniture was bought for were not on the list of clients that the DCMH was responsible for. Instead of communicating with the agency to see if they made a mistake or requesting for information, you just took the short cut by informing the agency that the items I questioned were disallowed. You only started communicating with the agency about this matter amounting to thousands of dollars after I insisted you to do so (pl. see the attached email marked #4). An instance of not reviewing the HDSW's Westcares Program claim properly was previously brought to your attention (pl. see the attached email marked #4).

4. You were told in person and communicated through email many times the importance of performing your job duties in a timely manner. However, you are having great difficulties in managing your assignments. There have been many instances that you wouldn't respond to the providers' queries or requests for payment in a timely manner even after they are in compliance with our requirements which causes great hardship to them in managing their operations(pl. see attached emails marked #4A).

5. On 12/21/16, after your review, you gave me monthly claims/payment vouchers for PD&D Planning Grant from June 2016 through October 2016 to sign off/ approve payments. However, when I looked at the June claim, I realized that there wasn't any back up documents in support of their claims such as pay roll registers for salaries, invoices, or proof of payments for other expenses. These claims were given to you in August, and you had more than enough time to check these vouchers for required backup documents. When I asked about the lack of back up documents, you didn't have a proper response to it. You took those vouchers back, agreeing that you would obtain necessary back up. Ultimately, you obtained the pay roll registers for the staff salaries claimed on the vouchers, but omitted the back-up documents for other expenses and expenses for contractors (PIT Counters). In the meeting held on 1/10/16 which was attended by Deputy Commissioner Michael Orth, Annette Peters Ruvolo, you and I, the issue of PD&D's held up claims, claims that included PIT Count Charges for July & October months, was discussed, and a decision was made to process the claims after removing the PIT Count charges, as the PD&D has not yet made payments to the PIT Counters as the HUD programs are administered on a reimbursement basis. However, you disregarded this decision and resubmitted the claim without making any changes which caused me to return the claims after making notes. (Pl. see the attached email marked #5 ) You then again submitted the PD&D's claim for the month of November with consultants (Social Policy Innovation) charges for me to sign off the payment voucher. However, my review of this claim showed that PD&D had not provided proof of payment to the consultant, and the claim was returned to you with a note asking if you have gotten the proof of payment. It is clearly evident that you are not properly checking the claims to see whether the required back-up documents are provided with the claim or not. It is clear that you have trouble processing the information and directions which are given to you.

6.  In the meeting held on 12/15/2016 attended by Annette Peters Ruvolo, Program Director for the HUD Programs and PD&D Consultant, to discuss the issues related to HUD Program Vouchering System and the program as a whole, you were asked to provide the monthly status reports of this program to me immediately. However, as of to date, you have not provided this report. It should also be brought to your attention that when you were initially asked to attend this meeting by the Program Director, you had declined it without giving a reason, and you were given a supervisory instruction to attend the meeting (pl. see the attached email marked #6).

7.  Even though you have been told many times about the need of giving your monthly activity report by the 5th of the month, you have made a habit of giving this report late almost every month. The activity report for December was given to me only on 1/12/17, after I reminded you through the attached email marked #7.

8.  On 12/9/16, I had asked you to meet with me to discuss the renewal of the HUD's Leasing Grant. This meeting was needed because you were provided with the paperwork for its renewal in August, but you didn't take any action. You just ignored my request and when I reminded you about your inaction on this matter and your response was that it got buried under the papers. (see the attached email marked #8).

9.  You have also shown great difficulty in following simple instructions, or fail to give any attention to them when completing the tasks assigned to you, especially when a person in your position is expected to show high level of judgement and function independently. As you were notified on 8/18/16, you either didn't give attention to, or couldn't understand the instructions of the Budget Department when you prepared the 2017 Trust Budgets for the HUD grants and departmental agreements that you manage. In the end, I ended up preparing this document in its entirety. (See attached email marked #9).

10.  Your irrational behavior at times is also a matter of great concern. On December 12, 2016, besides you, I was copied to an email that the IT department Manager Nancy Birnbaum sent to Yoav, who is a consultant helping the Dept in managing the HUD Vouchering System stating that the request he made to IT for making changes in the said system needed approval from DCMH Management. You immediately responded to her saying "DCMH administration approves this request" without discussing the issue with me. After telling you via email, that you should have discussed this matter with me, you responded with an email bordering insubordination (pl. see the attached email marked #10). Your use of language in official emails is inappropriate. Using terms such as "the world is not going to end in 2 weeks" and "be nice, I know what I am doing" are completely unnecessary, and not in adherence to the decorum of the office (pl. see the attached email marked #11. Following this, you immediately requested time off from 12/27/16 to 1/6/17 returning to duty on 1/9/17, on account of annual vacation time. Because this time is crucial for the closing of the interdepartmental accounts, I felt this request was made purposely to hinder both my work and the proper functioning of the division. However, I did not deny this request, but simply asked for a written list of pending work on your desk, and your plan for completing your assignments before the

deadline of sending the final inter deptl claims to DSS on 1/9/17. You never provided this list, and instead chose to complain about not receiving my approval for the vacation time. Ultimately, you chose not to complete the list, and then proceeded to withdraw your request for time off, still not providing the list of pending work amounting to insubordination. Up until January 10, you withheld an enormous amount of work from me until a day after the due date, forcing me to sign off without a detailed review. In addition, your actions in a social setting have been questionable. In a specific example, on December 21, 2016, in a meeting with the deputy commissioner per your request to address the issue of vacation time you requested, you made false claims that I was often "disappearing" from the office. I explained to you that as the Director of Administration, I do attend many meetings both inside and outside the office. You then demanded that you be informed of any such meeting I would attend. Your demand seems to suggest that you either misunderstand your role in this office, or mean to indirectly question my authority. These beliefs are further seen in the tone with which you send emails to me or to your coworkers (pl. see the attached email marked #12). You had also suggested that while I am away from my office a lot of staff members come to your office for information. When I asked you how many people came to your office in a given day or week and what their questions are, you couldn't give me an answer but responded by saying, many. Since then I discussed this matter with you separately and suggested going forward you need to provide the details of such cases, and for almost about a month now you informed me about one instance of a staff. member from OPWDD approached you and asked how long the OPWDD records be kept. It appears to me that you made this false claim to give a reason for your poor work performance.

Based on the above stated grounds, you are hereby referred to the Employee Assistance Program(EAP). You must contact the EAP Office at 995-6070 within 5 business days, to make an appointment and confirm the same to me. You are also required to inform me about the meetings you will have with the EAP, so that permission can be granted to leave your desk.

By signing this memo, you are acknowledging that the contents of this memo have been discussed with you, and also acknowledging the receipt of it.

Signature _____ Dated _1/20/17_____

CC: Susan Manzione, Program Director-EAP

Personnel File.

**EXHIBIT 2**



Westchester
gov.com

Department of Human Resources

## MEDICAL CERTIFICATION STATEMENT
### (EMPLOYEE'S OWN SERIOUS HEALTH CONDITION)

### SECTION I: To Be Completed by the EMPLOYEE:

Please complete Section I before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b)

Employee's Name:

First _Thomas_ Middle _T._ Last _Joseph_

### SECTION II: To Be Completed by the HEALTH CARE PROVIDER:

Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you do not provide any genetic information when responding to this request for medical information. "Genetic Information" as defined by GINA includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Healthcare Provider's Name and Business Address: _Dr Robert Olto  1-Doty Unit_
_St Vincents Westchester  275 N. At Harrison N Y_

Type of Practice/Medical Specialty: _Psychiatry_

Telephone: _914 925 5373_ Fax: _914 925 5161_ Email: ___

➤ Serious Health Condition: The attached sheet describes a "serious health condition". Does the condition qualify under any one of the categories described? If so, check the applicable category:

(1) ☐ (2) ☐ (3) ☐ (4) ☑ (5) ☐ (6) ☐ or None of the above ☐

Describe the specific medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:
_Alcohol Use Disorder Severe F 10.20_
_Inpatient Rehab in Progress_

-1-

**SECTION II (cont'd):  To Be Completed by the HEALTH CARE PROVIDER:**

I. ☑ Check here if employee is unable to work at all and provide the beginning and end date of the period of time the employee will be unable to work.

Begin Date: 2/28/17
End Date: 3/26/17

II. If the employee is or will become able to work, must they work intermittently or on a reduced work week schedule due to their condition? ☐ Yes  ☑ No

    a. If YES, provide the beginning and end date for the period of intermittent or reduced work week.
    Begin Date: _____
    End Date: _____

    b. If YES, state the days/hours the employee may work per week during the period noted in (a) above.
    Work Days Per Week: _____
    Hours Per Work Day: _____

    c. If the basis for the intermittent or reduced work week schedule is to receive treatments for the condition, provide an estimate of the probable number, length and interval between such treatments, actual or estimated dates of treatment if known and period required for recovery, if any

    _____

    _____

III. If the condition is a chronic condition state whether the employee is presently incapacitated and unable to work.

    a. If YES, provide the duration, beginning and end date of such incapacity.

    _____

    b. If NO, please provide the likely frequency and duration of episodes (flare-ups) of incapacity.
    None Completing inpatient alcohol rehabilitation
    Estimate frequency of flare-ups and duration of incapacity over next 6 months:

    Frequency: None times per _____ weeks(s) _____ month(s)

    Duration: _____ hours or _____ day(s) per episode

    c. If the employee is able to work but needs intermittent leave or a reduced work week check here ☐ and complete Section II above.

Health Care Provider Signature _____ PN 11 AE188689   Date: 3/15/17

*An employer may contact an employee's health care provider for authentication or clarification of the medical certification by using a health care provider, a human resource professional, or a management official. In no case may the employee's direct supervisor contact the employee's health care provider. Employers may not ask the health care provider for additional information beyond that contained on the medical certification form.*

-2-

From: "Poovappallil; Thomas"
<tps2@westchestergov.com>
Date: March 3, 2017 at 9:28:00 AM
EST
To: Thomas Lini
<linijthomas@gmail.com>
Cc: "Cronin, Timothy"
<tmc3@westchestergov.com>
Subject: RE: FMLA Form for
Thomas T Joseph

Hello Lini:
Yes, I am in receipt of the FMLA
Certification Form, and it appears to be
in order. Please makes sure that Thomas
brings Medical Fitness Certificate when
he comes back to work.
Thanks.

Tom S. Poovappallil
Westchester County Dept of
Community Mental Health
112 E. Post Road, 2nd Floor
White Plains, NY 10601
Phone: 914-995-5160
Fax: 914-995-5254

From: Thomas Lini
[mailto:linijthomas@gmail.com]
Sent: Thursday, March 02, 2017 5:04 PM
To: Poovappallil, Thomas
Cc: Cronin, Timothy
Subject: FMLA Form for Thomas T Joseph

Hi Mr. Thomas,

I am Lini Thomas, the wife of Mr.
Thomas Joseph hereby attaching the
FMLA form for my husband for your
record.

Please let me know if you received the
form.

Thank you

Lini Thomas

From: "Poovappallil, Thomas"
<tps2@westchestergov.com>
Date: March 15, 2017 at 9:16:56 AM
EDT
To: Thomas Lini
<linijthomas@gmail.com>
Subject: RE: Thomas T Joseph
Extended Absence

Okay, thanks for letting me know. Pl.
send in the completed FMLA
Certification Form right away. Thanks.

**Tom S. Poovappallil**
Westchester County Dept of
Community Mental Health
112 E. Post Road, 2nd Floor
White Plains, NY 10601
Phone: 914-995-5160
Fax: 914-995-5254

From: Thomas Lini
[mailto:linijthomas@gmail.com]
Sent: Monday, March 13, 2017 4:49 PM
To: Poovappallil, Thomas
Cc: Cronin, Timothy
Subject: Thomas T Joseph Extended Absence

Hi Mr. Thomas,
I am informing you that Thomas T
Joseph's hospital stay is going to be
extended, probably until March 28.
The new FMLA form will be sent to
you as soon as possible.
Thanks

Lini Thomas

**EXHIBIT 3**



**White Plains Hospital**

**WHITE PLAINS, NEW YORK 10601**

JOSEPH.THOMAS
W000709542     F00027546910
DOB: 05/09/1965 SEX:M AGE: 51
Woodson.Kevin MD          664 F

PATIENT LABEL / IDENTIFICATION

# DISCHARGE NOTICE

Date: 2 / 28/ 17

## READ THIS LETTER CAREFULLY. IT CONCERNS YOUR PRIVATE INSURANCE BENEFITS OR MEDICAID BENEFITS OR IF YOU ARE UNINSURED.

PATIENT NAME: Thomas Joseph          PRIMARY PAYOR AT DISCHARGE: Pomco.

ATT. PHYS.: _____   MR# W000709542   ADM. DATE: 2 /24/17

Dear Patient

   Your doctor and the hospital have determined that you no longer require care in the hospital and will be ready for discharge on:

   Tuesday                    2 /28/ 17
   _____       _____
        Day of Week                Date

   **IF YOU AGREE** with this decision, you will be discharged. Be sure you have already received your written discharge plan which describes the arrangements for any future health care you may need when you leave the hospital.

   **IF YOU DO NOT AGREE** and think you are not medically ready for discharge or feel that your discharge plan will not meet your health care needs, you or your representative may request a review of the discharge decision by contacting your review agent indicated on the reverse side of this page.

### IMPORTANT NOTICE ABOUT THE PAYMENT FOR YOUR CARE

   If your hospital care is covered by private health insurance, you may be charged directly while you remain in the hospital while the discharge review is being conducted. Whether you have to pay during this period will depend on your private health insurance benefits and if the review agent agrees with you that you need to stay in the hospital.

   If your hospital care is covered under the Medicaid program, Medicaid will pay for the days you remain in the hospital while the discharge review is being conducted.

   **IF YOU WOULD LIKE A REVIEW,** you should immediately, but not later than noon of (day and date) Wednesday 3-1-17 call the telephone number checked off on the reverse side of this page.

   **IF YOU CANNOT REQUEST THE REVIEW YOURSELF,** and you do not have a family member or friend to help you, you may ask the hospital representative at Extension #1143, who will request the review for you.

   **IF YOU REQUEST A REVIEW,** the following will happen:

   (1)   the review agent will ask you or your representative why you or your representative think you need to stay in the hospital and also will ask your name, admission date, and telephone number where you or your representative can be reached.

   (2)   after speaking with you or your representative and your doctor and after reviewing your medical record, the review agent will make a decision which will be given to you in writing.

   **IF THE REVIEW AGENT AGREES WITH THE DISCHARGE DECISION,** you will be financially responsible for your continued stay after noon of the day after you or your representative has been notified of the review agent's decision.

   **IF THE REVIEW AGENT AGREES THAT YOU STILL NEED TO BE IN THE HOSPITAL:** for Medicaid patients, Medicaid benefits will continue to cover your stay; for private health insurance patients, coverage for your continued stay is limited to the scope of your private health insurance policy.

**NOTE:** If you miss the noon deadline mentioned above, you may still request a review. However, if the review agent disagrees with you, you will be financially responsible for the days of care beginning with the proposed discharge date.

If you would like a review of your hospital stay after you have been discharged, you may request a review by the review agent within thirty (30) days of the receipt of this notice or seven days after receipt of a complete bill from the hospital, whichever is later, by writing to the review agent.

I have received this notice on behalf of myself as a patient or as the representative of the patient:

_____          22 /28 /17      9:35 AM
        Signature                       Date            Time

Self
_____
        Relationship

WDISCHNOTICE                                              101-085 (1/15)

March 20, 2017

Saint Vincent's Westchester 1-Doty Unit.

Thomas Joseph is medically cleared to return to full employment without restrictions on March 27
2017.

Sincerely,

Robert Olko M.D.          3/20/17

106234

Case 7:20-cv-00420-NSR   Document 1   Filed 01/15/20   Page 45 of 61



# St. Vincent's Hospital
# Westchester
### A Division of Saint Joseph's Medical Center

## Addiction Rehabilitation Inpatient Program

# Certificate of Completion

### Presented to:

Thomas Joseph

**Sobriety Date:** 2/28/17          **Today's Date:** 3/22/17

**Patient Care Director:** Crystal Moschiano, RN, BSN

EXHIBIT 4

COUNTY OF WESTCHESTER
DEPARTMENT OF Community Health
--------------------------------------------------------------X
In the Matter of Certain Disciplinary Charges
Preferred by Mark Herceg, Ph.D. as Commissioner
of Westchester County Department of Community
Health.

                      Charging Party,                Hearing Officer's
                                             Report and
                    -against-                 Recommendation

, THOMAS JOSEPH,

                     Charged Party.
--------------------------------------------------------------X

To:    Mark Herceg, Ph.D., Commissioner
        Westchester County Department of
        Community Health

        ROBERT J. PONZINI, as Hearing Officer herein, presents his report and recommendations:

1.    Notice of Charges dated March 31, 2017 against Thomas Joseph ("Respondent") were duly served upon him by Mark Herceg, Ph.D.,, Commissioner of the Westchester County Department of Community Mental Health ("Petitioner") on or about March 31, 2017. The Respondent filed an answer with affirmative defenses on or about April 4, 2017. On May 17, 2017, the Petitioner filed a Notice of Amended Charges of that same date upon the Respondent. These Amended Charges are the basis for the proceeding herein and, while no formal answer was filed, they are deemed statutorily denied.

2.    Said charges consist of ten (10) specifications of misconduct and/or incompetence alleging, *inter alia*, in that the respondent, in his capacity as a Supervisor, Fiscal Operations:

1

Specification 1: On or about January 19, 2017, you engaged in misconduct and/or incompetence when you failed to report to the
Employee Assistance Program("EAP"), after being given a supervisory referral.

Specification 2: You engaged in misconduct and/or incompetence when you failed to report to EAP as directed.

Specification 3: On or about April 4, 2017, you engaged in misconduct and/or incompetence when you failed to provide the details of
the work completed onApril 3, 2017 and/or April 4, 2017 to your supervisor, Thomas Poovappallil, as directed.

Specification 4: On or about April 5, 2017, you engaged in misconduct and/or incompetence when you failed to use the correct
"Funding Code/Program Code" on the worksheet for the advance payment to "Mental Health Empowerment Project".

Specification 5: On or about April 5, 2017, you engaged in insubordinate behavior in you verbal and/or email communications to your
supervisor

Specification 6: On or about April 5, 2017, you engaged in misconduct and/or incompetence when you failed to correctly calculate the
"advance payments for the Mental Health Empowerment Project".

Specification 7: On or about April 5, 2017, you engaged in misconduct and/or incompetence when you failed o timely resubmit a
payment voucher.

2

Specification 8: On or about April 6, 2017, you engaged in misconduct and/or incompetence when you failed to provide your

supervisor with the details of the work you completed that day.

Specification 9: On or about April 6, 2017, you engaged in misconduct and/or incompetence when you failed to provide your

supervisor with the details the work you completed on that day.

Specification 10: On or about April 19, 2017, you engaged in misconduct and or incompetence when you failed to correctly prepare

and/or calculate the"CASACS First Quarter Cost Report" to the Department of Social Services.

3.      Marc Herceg, Ph.D., Commissioner, Westchester Commissioner of Community Mental Health, by letter dated March 31, 2017, designated me to be the hearing officer pursuant to Section 75 of the Civil Service Law. I was directed to submit my findings and recommendations to him together with the records and exhibits, for his review and determination.

4.      Hearings were held before me at the Westchester County Department of Law on June 2, 2017 and June 26, 2017.  At each hearing, present were Thomas Joseph, the Respondent, his attorney, Nathaniel Charny, Esq. and for the Department, David Polizzi Assistant County Attorney, Westchester County.

5.      Among the witnesses called by the Petitioner were: Thomas Poovappallil, Director of Mental Health Services ("Poovapallil"). The Respondent testified in defense of the charges.

6.      Annexed hereto and made a part hereof are the stenographic transcript of the

3

minutes and exhibits admitted into evidence. Rather than list each individual exhibit, they are detailed more specifically in the appendix to the minutes which is incorporated by reference herein. Further, each party has submitted post hearing briefs which I have taken into account in arriving at my determination.

## PRELIMINARY RULINGS

7.    As hearing officer, I charge myself with points of law which I find are controlling and binding in this proceeding. It is well established that the courts will not interfere with an administrative determination after a disciplinary hearing if the determination is supported by substantial evidence. Pell v. Board of Education of Union Free School District No. 1 of the Towns of Scarsdale and Mamaroneck, 34 NY2d 222, 230-31, 356 NYS2d 833 (1974). The hearing officer should consider the totality of the evidence and all reasonable inference to be drawn therefrom. Moorehead v. Langloh, 146 AD 2d 777, 778, 537 NYS 2d 258 (2d Dep't 1989). "The New York State rule has long been that whether evidence is substantial is to be determined 'in light of the record as a whole' ". Kelly v. Murphy, 20 NY2d 205, 209, 282 NYS2d 254 (1967) (citations omitted).

Substantial evidence exists "when the proof is 'so substantial that from it an inference of the existence of the fact found may be drawn reasonably' ". 300 Gramatan Avenue Associates v. State Division of Human Rights, 45 NY2d 176, 408 NYS 2d 54 (1978) (citations omitted).

A hearing officer is further charged with the responsibility of making judgments with regard to a witness's credibility. The Court of Appeals has stated that "a hearing officer's report is entitled to weight, at times variously stated to be 'much', 'considerable', or the 'greatest', in determining the existence of substantial evidence, particularly to the extent that material facts in a given case may depend on resolving the credibility of witnesses as shown by their demeanor or conduct at the hearing." Simpson v. Wolansky, 38 NY2d 391, 394, 380 NYS2d 630 (1975). The Court of

4

Appeals in <u>Kelly</u>, *supra*, at 210, *quoting*, <u>Universal Camera Corp. v. Labor Board</u>, 340 US 474, 493, 71 S.Ct. 456 (1951), stated "the trial examiner's report is entitled to weight in determining the existence of substantial evidence particularly 'to the extent that material facts in any case depend on the determination of credibility of witnesses as shown by their demeanor or conduct at the hearing.' "

## FINDINGS OF FACT

1.    The respondent is employed as a Supervisor, Fiscal Operations with the Westchester County Department of Community Health. The Charges against the respondent span an approximate four (4) month period beginning in January, 2017 and continuing through April, 2017. They address ten (10) instances of incompetence and failure to follow basic Department policies. In the course of the hearing, the Department entered into evidence a Department memo dated January 19, 2017 (Co Ex 1), emails between Poovappallil and respondent dated April 5, 2017 (Co Ex 2), emails between the respondent and multiple parties dated April 6, 2017 (Co Ex 3), a Department memo dated April 7, 2017). The Respondent entered into evidence the evaluation of the respondent from March 1, 2016 (Rs Ex 1), time leave records for the Respondent (Rs Ex 3), an email dated January 20, 2017 (Rs Ex 4).

Poovapallil testified that he supervised the respondent directly since he began working with the Department in 2012 (Tr 12, 6-7). .Poovappsllil also testified that the respondent was acquainted with the rules of the Department (Tr 12, 15-17).

Poovappallil testified that he gave the respondent a supervisory directive to report to EAP within five (5) days on or about January 20, 2017 (Tr 24, 13-25). Further mover Co Ex 1, a memo signed by the respondent was entered into evidence, which stated:

"Based upon the above stated grounds, you are hereby referred to the

5

Employee Assistance Program (EAP). You must contact
        the EAP office at995-6070 within 5 business days, to make an
appointment and confirm the same to me. You are also required
        to inform me about the meeting you have with EAP, so that permission
can be granted to leave your desk.


        By signing this memo, you are acknowledging that the contents of this
memo have been discussed with you, and also
        acknowledging the receipt of it. (Co Ex 1, pg 4)


Poovappallil further testified the he personally observed the respondent sign this memo (Tr 25, 24-25, 26,2). Poovappallil further testified that, irrespective of this instruction, the respondent did not report to EAP as directed. (TR 26, 6-8). Poovappillil also testified, that in his opinion, as the respondent's supervisor, that respondent's failure to report to EAP contributed to his continued problems at work. (Tr 26, 14-17)


The respondent is charged in two (2) specifications with respect to his failure to provide his supervisor with a daily summary of the work he performed (HO Ex 3, Specifications 3 and 9). Poovappallil testified that on or about March 27, 2017, he directed the respondent to meet with him on a daily basis and show and/or discuss the work which was completed by the respondent on that day (TR27, 2-20). Poovappallil testified that on April 3 and April 4, 2017 the respondent failed to meet with him and/or provide a copy of the work he completed on that day (Tr 29, 3-16). Poovappallil testified as his direct supervisor that the respondent fail to provide him with the details of his daily work on April 6, 2017 (Tr 44, 12-17.


The respondent is charged with one (1) specification for his failure to use the correct "Funding Code/Program Code". (HO Ex 3, Specification 4). Poovappallil testified that on or about April 5, 2017 the respondent used the incorrect funding code or program

6

code regarding an advance payment to the Mental Health Empowerment Project (Tr 32, 3-15).

The respondent is charged with one (1) specification of insubordinate behavior. (HO Ex 3, Specification 5). Poovappallil testified that on or about April 5, 2017, he received an email from the respondent which was insubordinate. (Tr 35, 13-19). The email sent by the respondent to his supervisor Poovappallil states in relevant part "I expect you to give me another Memo stating insubordination which is your favorite word now a days!" (Co Ex 2).

The respondent is charged with one (1) specification with respect to his failure to properly perform his job duties by failing to correctly calculate advance payments (HO Ex 3, Specification 6). Poovappallil testified that the respondent failed to correctly calculate the advance payment for the Mental Health Empowerment Program (Tr 40, 21-25). This affected the operation of the program and was an embarrassment to the department.

The respondent was charged with two (2) specifications relation to his failure to properly perform his job duties by failing to resubmit a payment voucher. (HO Ex 3, Specifications 7 and 8) Poovappallil testified that the charged party failed to timely resubmit a payment voucher to the Mental Health Empowerment Project (Tr 42, 12-25, 43,2-25). Once again this affected the operation of the program and was an embarrassment to the department.

The respondent was charged with one (1) specification related to his failure to properly prepare and/or calculate the "CASACS First Quarter Cost Report for the Department of Social Services. (HO Ex 10, Specification 10). Poovappallil testified that despite his directive, the respondent, the respondent failed to properly prepare and/or calculate the CASAC First Quarter Cost Report of the Department of Social Services (TR 45, 6-25).

7

Once again this affected the operation of Social Services and the efficiency of the Department.

In his defense, the respondent adopted the position of confession and avoidance, offering excuses, minimizing the errors and the consequences thereof, and attempting to attribute any errors or wrongdoing to his supervisor. To say it was unconvincing would be an understatement.

## DECISION

2.    The Petitioner has submitted substantial and credible evidence to sustain specifications "1", "2", "3", "4", "5", "6", "7", "8", "9", and "10". I find the testimony of the petitioner's witness Poovappallil to be particularly credible and compelling, when taken in conjunction with the exhibits, to be conclusive. In response and defense of the charges, the Respondent has offered various defenses, which I have considered in conjunction with the record as a whole. I find, after due deliberation, that those arguments offered in defense of the respondent's conduct are neither persuasive nor his testimony to be credible whatsoever.

3.    Based upon the above findings of fact, I find that the Respondent is guilty of misconduct and/or incompetence and that the allegations contained in Specifications "1", "2", "3", "4", "5", "6", "7", "8","9" and "10" have been sustained in all respects by credible and substantial evidence.

## RECOMMENDATION AS TO PENALTY

4.    At the outset, I would like to state that I have reviewed the briefs prepared by the attorneys for the Petitioner and the Respondent and I am aware of the factors set forth in the seminal case, Matter of Pell v. Board of Education, 34 NY2d 222 (1974), and

8

have taken not of the following factors, among other, to the extent they were discussed at all:

a) Length of employment

b) Respondent's disciplinary history

c) Prospects for future employment

d) Loss of future benefits that might result

e) Impact on Respondent's family if any

The respondent by his own actions, willfully and deliberately, did not follow the directives of his supervisor nor perform his job duties as required. He was provided one on one supervision in an effort to correct any short comings in his performance and to preserve his position. Instead of embracing the opportunity, he resisted the opportunity to correct his attitude and performance. Furthermore, as hearing officer I have had the opportunity to observe the respondent during the course of the hearings and find him disengaged and when testifying lacking credibility. To return him to a position in finance in a small department when mental health agencies are relying on his skills and efforts would not serve the public interests.

Taking in to account all of the factors required by law and the record as a whole, I recommend that the respondent be terminated. In my judgment this is a fair and just recommendation as to penalty under all of the circumstances herein.

Dated:  January 16, 2017
        White Plains, New York

                    Respectfully submitted,

9

Robert J. Ponzini, Hearing Officer

10



George Latimer
County Executive

Department of Community Mental Health
Michael Orth, MSW.
Commissioner

February 5, 2018

Thomas T. Joseph
21 Albemarle Road
White Plains, New York 10605

      Re:    Disciplinary Hearing Pursuant to Section 75 of the
             New York State Civil Service Law

Dear Mr. Joseph:

After careful review of the report and recommendations of the hearing officer and the record of disciplinary hearing against you on the charges contained in the Notice of Amended Charges dated May 17, 2017, I adopt all the findings of fact of the hearing officer that the charges have been sustained and find you guilty of charges and specifications "1" through "10".

In addition, I adopt the recommendation of the hearing officer that the appropriate penalty to be imposed is immediate termination. Accordingly, your employment with Westchester County is terminated effective February 6, 2018.

Under the provisions of Section 76 of the Civil Service Law, you are entitled to appeal from this determination by application either to the Civil Service Commission or to the courts. If you elect to appeal to the Civil Service Commission, such appeal must be filed, in writing, within twenty (20) days after receipt of this notice of my determination.

Very truly yours,

Michael Orth, MSW.
Commissioner

cc:    David Polizzi, County Attorney's Office
       Department of Human Resources
       Nathaniel K. Charny, Esq.
       Personnel File

112 East Post Road
White Plains, New York 10601   Telephone: (914) 995-5220

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.



_____
Thomas Joseph


STATE OF NEW YORK   )
COUNTY OF            )   ss: 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

Thomas Joseph, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_____
Thomas Joseph


Subscribed and sworn to
before me this        day
of  Dec 11,        , 20 20


_____
Signature of Notary Public



Westchester
gov.com

George Latimer
County Executive

Department of Community Mental Health
Michael Orth, MSW.
Commissioner

February 5, 2018

Thomas T. Joseph
21 Albemarle Road
White Plains, New York 10605

   Re: Disciplinary Hearing Pursuant to Section 75 of the
     New York State Civil Service Law

Dear Mr. Joseph:

  After careful review of the report and recommendations of the hearing officer and the record of disciplinary hearing against you on the charges contained in the Notice of Amended Charges dated May 17, 2017, I adopt all the findings of fact of the hearing officer that the charges have been sustained and find you guilty of charges and specifications "1" through "10".

  In addition, I adopt the recommendation of the hearing officer that the appropriate penalty to be imposed is immediate termination. Accordingly, your employment with Westchester County is terminated effective February 6, 2018.

  Under the provisions of Section 76 of the Civil Service Law, you are entitled to appeal from this determination by application either to the Civil Service Commission or to the courts. If you elect to appeal to the Civil Service Commission, such appeal must be filed, in writing, within twenty (20) days after receipt of this notice of my determination.

Very truly yours,

Michael Orth, MSW.
Commissioner

cc: David Polizzi, County Attorney's Office
  Department of Human Resources
  Nathaniel K. Charny, Esq.
  Personnel File

112 East Post Road
White Plains, New York 10601 Telephone: (914) 995-5220

Thomas T Joseph

21 Albemarle Rd

White Plains, NY 10605

(914) 946-9475 / 917-543-5246

ttjoseph08@gmail.com

January 8, 2020

Pro Se Intake Unit

500 Pearl Street

Manhattan, NY

# COMPLAINT

Respected Sir/Madam:

Re: Job Discrimination/Retaliation Complaint against Westchester County and Westchester County Department of Community Mental Health

I have been employed in the County for ten years by passing the Civil Service Tests and appointed through the proper channels. Somehow, I had been terminated as of February 5, 2018 due to discrimination. Details are in the attachments. Since this was an unexpected termination, I didn't get enough time to gather sufficient documents in favor of me.

As I have been unemployed since the beginning of the year 2018 and have no income, I am requesting a counsel to represent me during the process of this complaint.

Thank you.

Sincerely,

Thomas T Joseph



RECEIVED
JAN 15 2020
PRO SE OFFICE

PRIORITY MAIL
POSTAGE REQUIRED

Please
Recycle



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7019 1640 0002 1697 9509





U.S. POSTAGE PAID
PM 1-Day
WHITE PLAINS, NY
10606
JAN 08, 20
AMOUNT

$14.15

R2304H109736-02

RETURN RECEIPT
REQUESTED

FROM:

Thomas T. Joseph
21 Albemarle Rd.
White Plains, NY 10605



USMP3
SDNY

RECEIVED
JAN 15 2020
PRO SE OFFICE

TO:

US District Court for
Southern District of NY
Pro Se Intake Unit
500 Pearl St.
New York, NY 10007

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14 © U.S. Postal Service; October 2018; All rights reserved.

DuPont™ Tyvek®
Protect What's Inside.™